**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| ENCYCLOPÆDIA BRITANNICA, INC., and MERRIAM-WEBSTER, INC., | Case No. 1:25-cv-07546 (JLR) |
| Plaintiffs, | |
| v. | **ORAL ARGUMENT REQUESTED** |
| PERPLEXITY AI, INC., | |
| Defendant. | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

## TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ................................................................................................................1

II.  BACKGROUND .................................................................................................................2

     A.   Perplexity's Answer Engine ....................................................................................2

     B.   Plaintiffs' Claims ....................................................................................................5

III. LEGAL STANDARD...........................................................................................................7

IV.  ARGUMENT.......................................................................................................................7

     A.   The Amended Complaint Does Not Plausibly Allege Direct Infringement
          by Perplexity for Answer Engine Outputs................................................................7

     B.   Plaintiffs Fail To Allege Any Facts Regarding Count II Output Claims for
          11 of 15 Registered Copyrights .............................................................................12

V.   CONCLUSION..................................................................................................................15

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Abdin v. CBS Broad., Inc.*,
　971 F.3d 57 (2d Cir. 2020)..................................................................................................7, 14

*ABKCO Music, Inc. v. Sagan*,
　50 F.4th 309 (2d Cir. 2022) ...............................................................................................8, 9

*Adams v. Warner Bros. Pictures Network*,
　No. 05-CV-5211, 2005 WL 3113425 (E.D.N.Y. Nov. 22, 2005).....................................12, 13

*Am. Broad. Co., Inc. v. Aereo, Inc.*,
　573 U.S. 431 (2014) .................................................................................................................8

*Ashcroft v. Iqbal*,
　556 U.S. 662 (2009)..................................................................................................................7

*Bus. Casual Holdings, LLC v. YouTube LLC*,
　No. 21-cv-3610, 2022 WL 837596 (S.D.N.Y. Mar. 21, 2022)................................................11

*BWP Media USA Inc. v. Polyvore, Inc.*,
　922 F.3d 42 (2d Cir. 2019)........................................................................................................9

*BWP Media USA, Inc. v. T&S Software Assocs., Inc.*,
　852 F.3d 436 (5th Cir. 2017) ...................................................................................................8

*CoStar Grp., Inc. v. LoopNet, Inc.*,
　373 F.3d 544 (4th Cir. 2004) ................................................................................................8, 9

*Dow Jones & Company, Inc. et al v. Perplexity AI, Inc.*,
　No. 1:24-cv-07984, Dkt. 80 (S.D.N.Y. Oct. 6, 2025)...........................................................2, 3

*EMI Christian Music Grp., Inc. v. MP3tunes, LLC.*,
　844 F.3d 79 (2d Cir. 2016)........................................................................................................8

*Evans v. NBCUniversal Media, LLC*,
　No. 21-cv-0984, 2021 WL 4513624 (C.D. Cal. July 23, 2021)..............................................13

*Francis v. Kings Park Manor, Inc.*,
　992 F.3d 67 (2d Cir. 2021) (en banc)........................................................................................7

*Hines v. Roc-A-Fella Recs., LLC*,
　No. 19-CV-4587, 2020 WL 1888832 (S.D.N.Y. Apr. 16, 2020) ...........................................13

*Hunley v. Instagram, LLC*,
  73 F.4th 1060 (9th Cir. 2023) ....................................................................................8

*Larball Publ'g Co., Inc. v. Lipa*,
  No. 22 CIV 1872, 2023 WL 5050951 (S.D.N.Y. Aug. 8, 2023) ......................................13, 14

*Long v. Dorset*,
  854 F. App'x 861 (9th Cir. 2021) ....................................................................................9

*Perfect 10, Inc. v. Giganews, Inc.*,
  847 F.3d 657 (9th Cir. 2017) ....................................................................................8

*Piuggi v. Good for You Prods. LLC*,
  739 F. Supp. 3d 143 (S.D.N.Y. 2024).................................................................................12, 13

*Redcell Corp. v. A.J. Trucco, Inc.*,
  No. 20 Civ. 18, 2022 WL 683007 (S.D.N.Y. Mar. 8, 2022) ......................................................11

*Shull v. TBTF Prods. Inc.*,
  No. 18 Civ. 12400, 2019 WL 5287923 (S.D.N.Y. Oct. 4, 2019) ............................................14

*Spool v. World Child Int'l Adoption Agency*,
  520 F.3d 178 (2d Cir. 2008).....................................................................................7

*Stevens v. Tomlin*,
  No. 23-cv-5898, 2023 WL 5486247 (E.D.N.Y. Aug. 24, 2023) ..............................................14

*Stross v. Twitter, Inc.*,
  No. 2:21-cv-8360, 2022 WL 1843142 (C.D. Cal. Feb. 28, 2022) ............................................9

*Taboola, Inc v. Ezoic Inc.*,
  No. 17 CV 9909, 2020 WL 3965308 (S.D.N.Y. Feb 21, 2020) ..............................................7

*The Cartoon Network LP, LLP v. CSC Holdings, Inc.*,
  536 F.3d 121 (2d Cir. 2008).................................................................... *passim*

*VHT, Inc. v. Zillow Grp., Inc.*,
  918 F.3d 723 (9th Cir. 2019) ....................................................................................8

*White v. DistroKid, LLC*,
  766 F. Supp. 3d 451 (S.D.N.Y. 2025)..............................................................................8

*Wolk v. Kodak Imaging Network, Inc.*,
  840 F. Supp. 2d 724 (S.D.N.Y. 2012), *aff'd sub nom. Wolk v. Photobucket.com, Inc.*, 569 F. App'x 51 (2d Cir. 2014)........................................................12

*Zappa v. Rykodisc, Inc.*,
  819 F. Supp. 2d 307 (S.D.N.Y. 2011)..............................................................................8

**STATUTES**

15 U.S.C. § 1125.......................................................................................................................6

17 U.S.C.
  § 106.............................................................................................................................6
  § 411(a) .....................................................................................................................15

**RULES**

Fed. R. Civ. P. 12(b)(6)...........................................................................................................7

**TREATISES**

4 Nimmer on Copyright § 13D.06 ........................................................................................13

## I.      INTRODUCTION

Amid the dizzying swirl of innovation around generative artificial intelligence ("AI") tools in recent years, Perplexity developed generative AI technology singularly focused on promoting access to information and truth. It built an "answer engine" that connects large language models ("LLMs") primarily developed and trained by other companies to the vast ocean of human knowledge and information dispersed across the internet. Perplexity's answer engine, also referred to as "Perplexity," provides the public with an automated tool to search for, acquire, and understand facts and ideas. Plaintiffs Encyclopædia Britannica, Inc. and Merriam-Webster, Inc. bring this suit seeking to monopolize such facts and ideas. On a full record, that effort will founder on bedrock copyright and trademark principles courts have applied for decades to permit innovative technologies like Perplexity.

This motion to dismiss ("Motion") asks the Court to apply at the outset one of those bedrock copyright principles—the requirement for defendant's "volitional conduct" to support any direct infringement claim—to the factual allegations pleaded in support of Plaintiffs' Count II. Those allegations assert that when a Perplexity *user* asks the answer engine to specifically obtain information from Encyclopædia Britannica or Merriam-Webster (e.g., "How does Merriam-Webster define plagiarism?"), Perplexity itself is ***directly*** liable for the resulting "verbatim" or "near verbatim" copies of Plaintiffs' works available on the internet. *See, e.g.*, Dkt. 43 ("Am. Compl.") ¶¶ 8-9. But black letter law, including the Second Circuit's seminal *Cablevision* decision, forecloses a direct infringement claim under this theory. *See, e.g.*, *The Cartoon Network LP, LLP v. CSC Holdings, Inc.*, 536 F.3d 121 (2d Cir. 2008) ("*Cablevision*"). *Cablevision* held under analogous facts that it is the end user—and not the provider of automated technology—that engages in volitional conduct when the user selects copyrighted content for copying using that technology, even where the technology provider determines the universe of materials available for

1

copying. *Id.* at 132. The Second Circuit explained that, "[i]n determining who actually 'makes' a copy, a significant difference exists between making a request to a human employee, who then volitionally operates the copying system to make the copy, and issuing a command directly to a system, which automatically obeys commands and engages in no volitional conduct." *Id.* at 131. The facts as pleaded describe the Perplexity answer engine as such a system. Because Plaintiffs' output claims are based on Perplexity **users'** (likely Plaintiffs') atypical usage in the form of explicit requests for, and the answer engine's automatic creation of, "verbatim" copies of Plaintiffs' works, Plaintiffs have not stated a direct infringement claim against **Perplexity** itself. That category of Plaintiffs' direct infringement claims (Count II) should be dismissed.

Trimming this case to remove Plaintiffs' legally deficient outputs claim will set the boundaries for the parties' pitched battle on Plaintiffs' remaining claims, including on the core issue of fair use at the heart of this and other pending AI cases. Dismissing Count II will guide the conduct of discovery and hone the presentation of issues for the Court to those that really matter.

Even if the Court were to find the allegations sufficient to state a direct infringement claim against Perplexity as opposed to third-party users, Plaintiffs failed to plead facts alleging infringing outputs for eleven of the fifteen registered copyrights attached to the Amended Complaint. At a minimum, Plaintiffs' Count II claims as to those eleven registrations should be dismissed.

## II. BACKGROUND

### A. Perplexity's Answer Engine

Perplexity is an AI company founded in San Francisco, California in 2022. It created a novel and groundbreaking AI tool known as an "answer engine." *See* Am. Compl. ¶ 1. "An answer engine is a tool designed to give you direct, detailed answers to your questions. Perplexity serves as an answer engine by searching the web, identifying trusted sources, and synthesizing information into clear, up-to-date responses." *Id.* at n.1 (citing Perplexity, *What is an answer*

*engine, and how does Perplexity work as one?*). Users rely on Perplexity's AI tool to obtain up-to-date, succinct, factual answers to a nearly limitless number of questions. *See id.* ¶ 64. For example, anyone can ask Perplexity: "How many Van Gogh paintings of sunflowers currently exist in the world?" *See* Answer, *Dow Jones & Company, Inc. et al v. Perplexity AI, Inc.*, No. 1:24-cv-07984, Dkt. 80 (S.D.N.Y. Oct. 6, 2025); *see also* Am. Compl. ¶¶ 1, 75-78. And it will respond with an answer, as well as with links to relevant sources on the internet and suggested related questions.



Summary Table: Van Gogh's Sunflowers

| Type | Number Originally Painted | Currently Existing |
| --- | --- | --- |
| Vase Sunflowers | 7 | 6 |
| Cut Sunflowers | 4 | 4 |
| Total | 11 | 10 |

Thus, as of today, ten authentic Van Gogh sunflower paintings still exist worldwide. vangoghstudio +4

In response to each specific user query, Perplexity's answer engine uses AI technology to cull facts in real time from numerous sources using a process called retrieval-augmented generation ("RAG"). *See id.* ¶¶ 49-50. It then condenses and summarizes those facts using an LLM, which automatically generates an easy-to-understand, natural-language response, incorporating facts and ideas gathered from sources on the internet. *See id.* ¶ 50. Users are free to click through and read the underlying sources contributing information to any answer, which are presented as links above the answer. *See, e.g.*, *id.* ¶ 75. As Perplexity puts it, "[w]hile we aim for accuracy, we encourage you to double-check sources for added confidence." *Id.* at n.1 (citing Perplexity, *What is an answer engine, and how does Perplexity work as one?*). Perplexity's answer engine is ***not*** designed to simply regurgitate or reproduce verbatim expressive content from any given source in the answers it generates; none of the Amended Complaint's allegations suggests otherwise. *See, e.g.*, *id.* ¶ 74 (alleging only that Perplexity's output answers are designed to "act as substitutes for users clicking on links" to retrieve factual information).

The processes described above are fully automated. As Plaintiffs allege, the "LLMs upon which Perplexity's AI products are built" can "generate answers to questions about information that is included in their training data" and are "capable of taking documents as input, then

4

summarizing or answering questions about those documents" because they "use algorithms to weigh the relevance of different parts of the input data" provided by users. *Id.* ¶¶ 46-47. Indeed, "[t]he quality of the output depends on the size of the model, the diversity of training data, and the specific architecture and training techniques used," not on any post-query intervention by anyone. *See id.* at ¶ 47.

"Once trained, LLMs may also be deployed in conjunction with a technique called 'retrieval-augmented generation' ('RAG')," which is a "technique or process that involves connecting an LLM to external sources of information, such as live search results, to improve the quality of its outputs." *Id.* ¶ 49. Plaintiffs allege that Perplexity uses RAG, or "grounding," to answer user prompts. As Plaintiffs allege, when a user submits a prompt to Perplexity's answer engine, it kicks off the following automated process: Perplexity's AI products (1) "obtain and copy content from its search index relating to the prompt;" (2) "combine the original prompt with the retrieved copied content in order to provide additional context;" and (3) "provide the combined data to an LLM, which generates a natural-language response." *Id.*

Plaintiffs never allege any act by anyone other than the ***Perplexity user*** from the time of the prompt to the ensuing output. *See* Am. Compl., *passim.* The user presses the button, and the Perplexity answer engine automatically executes. *See id.*

**B. Plaintiffs' Claims**

Plaintiffs compile and distribute encyclopedias and dictionaries, and are in the business of disseminating reference information to the public. *See* Am. Compl. ¶¶ 34-38. They describe themselves as "trusted sources for digital factual" content, *id.* ¶ 39, who "deliver[] knowledge," *id.* ¶ 35. For example, Encyclopædia Britannica describes itself as "a dynamic, continuously updated, and rigorously fact-checked information source for students, teachers, and lifelong

learners." *Id.* ¶ 34. And "Merriam-Webster, Inc. is a publisher of reference books and is most well-known for its publication of America's leading dictionary." *Id.* ¶ 37.

On September 10, 2025, Plaintiffs sued Perplexity for two counts of copyright infringement under 17 U.S.C. § 106 and one count of false designation of origin and dilution of Plaintiffs' trademarks under 15 U.S.C. § 1125. In Count I, Plaintiffs attack Perplexity's use of copyrighted works as "inputs" for its answer engine, "at the *curation* stage when it uses a software program called 'PerplexityBot' to crawl and scrape Plaintiffs' websites for Perplexity's 'answer engine,' or "when it copies Plaintiffs' copyrighted articles that are responsive to user searches to prompt responses from its RAG model."[1] *See* Am. Compl. ¶¶ 9, 104-06. These so-called "input" claims, while hotly disputed by Perplexity, are not the subject of this motion. Nor are Plaintiffs' Count III claims of false designation of origin and dilution of Plaintiffs' trademarks, which Perplexity also disputes.

In Count II, Plaintiffs allege Perplexity directly infringed their copyrights when "outputs or 'answers' to user queries contain and/or are derived from Plaintiffs' copyrighted content." Am. Compl. ¶ 116. These claims, which rest on answers allegedly containing "verbatim or near-verbatim reproductions" of Plaintiffs' works, *id.*, are the subject of this motion to dismiss for failure to state a claim due to the lack of any allegations to support the requisite volitional conduct by Perplexity.

For example, Plaintiffs allege the automated reproduction of a Merriam Webster definition in response to a user prompt (likely from Plaintiff) asking the answer engine "[h]ow does Merriam Webster define plagiarize?" is direct infringement ***by Perplexity***, as opposed to the prompter who specifically requested that the answer engine obtain Merriam Webster's content. *Id.* ¶ 75.

---

[1] All emphasis added unless noted otherwise.

Likewise, Plaintiffs allege direct infringement **by Perplexity**, when the answer engine generated a copy of Britannica content in response to a user's request that the answer engine "limit its answer to 'Britannica content only'" and "provide the exact passages from the Britannica article." *Id.* ¶ 76; *see also* ¶ 77. Again, the Amended Complaint alleges no intervening volitional act by any human, much less Perplexity the company. *See id.*, *passim.*

## III.    LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must allege "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Francis v. Kings Park Manor, Inc.*, 992 F.3d 67, 72 (2d Cir. 2021) (en banc). This pleading "standard 'requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action[] . . . will not do.'" *Taboola, Inc v. Ezoic Inc.*, No. 17 CV 9909, 2020 WL 3965308, at *6 (S.D.N.Y. Feb 21, 2020). While the Court must draw all reasonable inferences in Plaintiffs' favor and accept all nonconclusory allegations of fact as true when deciding a Rule 12(b)(6) motion, the Court need not credit speculative inferences, bald assertions, or conclusions of law. *See Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008). Accordingly, a plaintiff must allege "more than a sheer possibility that a defendant has acted unlawfully" and more than "facts that are 'merely consistent with' a defendant's liability." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Failure to do so warrants dismissal under Rule 12(b)(6). *Id.*

## IV.    ARGUMENT

### A.    The Amended Complaint Does Not Plausibly Allege Direct Infringement by Perplexity for Answer Engine Outputs

"To establish a claim of copyright infringement," Plaintiffs must prove: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Abdin v.*

*CBS Broad., Inc.*, 971 F.3d 57, 66 (2d Cir. 2020). The second prong of this test requires an allegation that the defendant engaged in "'volitional conduct' that 'causes' the copying or distribution." *ABKCO Music, Inc. v. Sagan*, 50 F.4th 309, 321 (2d Cir. 2022) (quoting *Zappa v. Rykodisc, Inc.*, 819 F. Supp. 2d 307, 315 (S.D.N.Y. 2011)); *see also Hunley v. Instagram, LLC*, 73 F.4th 1060, 1074 (9th Cir. 2023) ("'[E]very circuit to address this issue has adopted some version of . . . the volitional-conduct requirement.'") (quoting *BWP Media USA, Inc. v. T&S Software Assocs., Inc.*, 852 F.3d 436, 440 (5th Cir. 2017)).

The volitional conduct "prerequisite takes on greater importance in cases involving automated systems." *VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723, 731 (9th Cir. 2019); *see also Am. Broad. Co., Inc. v. Aereo, Inc.*, 573 U.S. 431, 454 (2014) (Scalia, J., dissenting) ("The volitional-conduct requirement . . . comes right to the fore when a direct-infringement claim is lodged against a defendant who does nothing more than operate an automated, user-controlled system."). As such, the law distinguishes between services that automatically make unlawful copies ***at the user's request*** and systems that do the same ***without a user request***. *Compare, e.g.*, *Cablevision*, 536 F.3d at 130-33 (finding no volitional conduct where system automatically adhered to a user's request) *with EMI Christian Music Grp., Inc. v. MP3tunes, LLC.*, 844 F.3d 79 (2d Cir. 2016) (finding volitional conduct where system retrieved copyrighted material ***without*** a user request). "[W]here a machine or system automatically undertakes actions that result in the unlawful copying of a copyrighted work, the mere ownership, construction, or supervision of the machine or system will ***not*** establish volitional conduct." *White v. DistroKid, LLC*, 766 F. Supp. 3d 451, 458 (S.D.N.Y. 2025); *see also CoStar Grp., Inc. v. LoopNet, Inc.*, 373 F.3d 544, 550 (4th Cir. 2004) (explaining that direct infringement requires "something more . . . than mere ownership of a machine used by others to make illegal copies"); *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d

8

657, 666 (9th Cir. 2017) ("[I]nfringement of the reproduction right requires copying *by* the defendant, which comprises a requirement that the defendant cause the copying.") (emphasis in original). Simply put, "direct liability attaches only to 'the person who actually presses the button.'" *ABKCO Music, Inc.*, 50 F.4th at 321-22 (quoting *Cablevision*, 536 F.3d at 131).

To sufficiently allege volitional conduct, "'[t]here must be actual infringing conduct with a nexus sufficiently close and *causal* to the illegal copying that one could conclude that the machine owner himself trespassed on the exclusive domain of the copyright owner.'" *BWP Media USA Inc. v. Polyvore, Inc.*, 922 F.3d 42, 63 (2d Cir. 2019) (emphasis in original) (quoting *CoStar*, 373 F.3d at 550). A plaintiff fails to state a claim for direct infringement if it does not assert that "the distribution [by the defendant] of the copyrighted material did not happen automatically" or that the defendant "instigated any copying, storage, or distribution." *Long v. Dorset*, 854 F. App'x 861, 863-64 (9th Cir. 2021) (cleaned up) (affirming dismissal of direct copyright infringement claim where there were no allegations of volitional conduct); *see also Stross v. Twitter, Inc.*, No. 2:21-cv-8360, 2022 WL 1843142, *2-4 (C.D. Cal. Feb. 28, 2022) (dismissing direct infringement claim for failure to allege defendant's conduct was not automated).

*Cablevision* is instructive. Cablevision was a cable company that aggregated television programming from broadcast and cable channels. 536 F.3d at 124. It created a "remote digital video recorder ("DVR") system, a "complex system requiring numerous computers, processes, networks of cables, and facilities staffed by [Cablevision] personnel twenty-four hours a day and seven days a week." *Id.* at 125. Cablevision's system allowed a customer to record programming for later viewing, and those recordings were centrally stored at Cablevision facilities. *Id.* The plaintiffs, owners of television programming, sued Cablevision alleging that it was *directly* liable for the copies of their programming made using the remote DVR system. *Id.* The Second Circuit

9

rejected that claim, finding that Cablevision's customers—but not Cablevision—engaged in the relevant volitional conduct. 536 F.3d at 133. The Court reasoned that, although Cablevision had "unfettered discretion in selecting the programming that it would make available for recording," it was not "sufficiently proximate to the copying to displace the customer as the person who 'makes' the copies." *Id.* at 132. Rather, direct liability fell only on the user because the copies at issue were "made automatically upon [a] customer's command." *Id.* at 131.

The same result follows here. Plaintiffs bring two counts of direct infringement against Perplexity. Count I, which is not the subject of this motion, is based on Perplexity's own alleged copying of Plaintiffs' works as ***inputs*** to develop its answer engine. Count II is based on the ***outputs*** or alleged copies of Plaintiffs' works automatically generated at Perplexity users' direction when they "press[] the button" requesting copies of those specific works. Am. Compl. ¶ 132. There is no allegation that Count II involves anything other than an automated response to a user query.

Plaintiffs allege the outputs provided by Perplexity's answer engine infringe because they "sometimes contain full or partial verbatim reproductions of Plaintiffs' copyrighted articles." *Id.* ¶ 73. But the verbatim or near-verbatim outputs that Plaintiffs allege are the direct result of the specific prompts entered by the *user*, not by any volitional conduct by Perplexity. As Plaintiffs allege, "[w]hen a *Perplexity user*" asks the answer engine to "provide the exact passages from the Britannica article," or similar questions, *id.* ¶ 76, articles "that are *responsive to user searches*" are allegedly "fed" to the RAG model and the "RAG model [allegedly] generates outputs" that are "substantially similar" to those articles. *Id.* ¶¶ 8-9. Nothing in the Amended Complaint alleges any non-automated act by anyone other than the ***Perplexity user*** from the time of the prompt to the ensuing output. The user presses the button, and the Perplexity answer engine automatically executes. Perplexity, by developing an AI tool that is able to automatically fetch and provide

10

specific content in response to user requests based on its pre-configuration and access to materials available on the internet, engages in no more volitional conduct than Cablevision did in connection with copies generated at the direction of its users by providing "access to a system that automatically produces copies on command." *Cablevision*, 536 F.3d at 132. Such conduct is, as a matter of law, insufficient to state a claim for direct infringement against Perplexity. *Id.*

The facts as pleaded in the Amended Complaint confirm that Perplexity cannot be directly liable for infringement in connection with the "verbatim" and "near-verbatim" outputs allegedly created in response to user queries as alleged in the Amended Complaint. Plaintiffs describe, and include screenshots of, prompts engineered (by Plaintiffs) to generate outputs that allegedly infringe their copyrights. *See* Am. Compl. ¶¶ 75-78. It is this highly atypical, litigation-driven "user" behavior that is the "proximate cause" of any allegedly infringing copies in the outputs, not Perplexity's provision of a general-purpose AI tool. *See id.* ¶ 75 (describing response to Plaintiffs' prompt "How does Merriam Webster define plagiarize?"), ¶ 76 (describing responses to Plaintiffs' prompts "What does Britannica say about the Druids?  Please limit your answer to Britannica content only" and "Please provide the exact passages from the Britannica article"), ¶ 77 (describing response to Plaintiff prompts "Please provide me with Britannica's article on Quantum Physics" and "Please provide the exact passages from this article").[2] Because Perplexity does not ***cause*** the

---

[2] Plaintiffs' allegation that Perplexity provides outputs with verbatim copies of their works "[e]ven when the user does not prompt Perplexity to limit its answers to Britannica's content" lacks any factual support. Am. Compl. ¶ 78. The "example" provided describes a user asking Perplexity a question reproducing verbatim the full title of a Britannica article. *Id.* (Question: "what are the top 9 mysterious disappearances of people other than Amelia Earhart." Britannica article title: "9 Mysterious Disappearances of People Other Than Amelia Earhart"). This hardly shows that the resulting answer did not occur automatically in response to a user's goading prompt. A court need not credit "inconsistent or contradictory" allegations or conclusory ones that lack "specific factual" support. *Redcell Corp. v. A.J. Trucco, Inc.*, No. 20 Civ. 18, 2022 WL 683007, at *8-9 (S.D.N.Y. Mar. 8, 2022).

11

outputs in response to user prompts, it cannot be held directly liable for them. *See, e.g.*, *Bus. Casual Holdings, LLC v. YouTube LLC*, No. 21-cv-3610, 2022 WL 837596, at *3 (S.D.N.Y. Mar. 21, 2022) (distinguishing passive from active action to hold that a plaintiff must allege the platform played "some 'deliberate role' in the alleged infringement"); *Wolk v. Kodak Imaging Network, Inc.*, 840 F. Supp. 2d 724, 742 (S.D.N.Y. 2012) (finding no volitional conduct at summary judgment as there was "no dispute that any reproduction, display or transmission of the Plaintiff's images by or through the KODAK Gallery website is an automated process with no human intervention by any employee of the Kodak Defendants"), *aff'd sub nom. Wolk v. Photobucket.com, Inc.*, 569 F. App'x 51 (2d Cir. 2014). Accordingly, Count II should be dismissed.

### B.    Plaintiffs Fail To Allege Any Facts Regarding Count II Output Claims for 11 of 15 Registered Copyrights

Most of Count II also fails for the independent reason that Plaintiffs did not plead any facts to support a claim of infringement in Perplexity's answer engine outputs for eleven of the fifteen copyrighted works in the Amended Complaint.[3] "To satisfy the second element" of a direct (or indirect) copyright infringement claim, "a plaintiff must demonstrate that (1) the defendant has actually copied the plaintiff's work; and (2) the copying is illegal because a substantial similarity exists between the defendant's work and the protectible elements of plaintiff's work." *Piuggi v. Good for You Prods. LLC*, 739 F. Supp. 3d 143, 157 (S.D.N.Y. 2024) (cleaned up). The latter requires pleading "facts regarding how the [works] are substantially similar," which requires "identifying with some degree of specificity how Defendant['s] works are substantially similar to

---

[3] These 11 works ("Eleven Works") are: Nos. TXu 2-503-544, TXu 2-503-584, TXu 2-503-589, TXu 2-503-609, TXu 2-503-614, TXu 2-503-573, TXu 2-503-592, TXu 2-503-550, TXu 2-503-601, TXu 2-503-578, TX 6-234-118. Am. Compl. ¶ 112.

[their] own." *Id.* at 162. Courts routinely reject copyright claims that are based on conclusory generalizations of infringement instead of on the asserted and accused works themselves. For example, in *Adams v. Warner Bros. Pictures Network*, the court held that the plaintiff failed to state a claim upon which relief may be granted under the Copyright Act because the plaintiff failed to specify "'by what acts' the defendant infringed the copyright" and thus did not "demonstrate how defendants infringed on his copyright by producing the films [at issue]." No. 05-CV-5211, 2005 WL 3113425, at *2 (E.D.N.Y. Nov. 22, 2005); *Hines v. Roc-A-Fella Recs., LLC*, No. 19-CV-4587, 2020 WL 1888832, at *3-4 (S.D.N.Y. Apr. 16, 2020) (holding that "to plead substantial similarity, a plaintiff must 'specify which aspects of the offending work allegedly infringed Plaintiff's work [and that] [t]he failure to do so is fatal, [] because the plaintiff has the burden of ... identifying with some degree of specificity how the defendant's works are substantially similar to her own") (cleaned up) (internal citations omitted). Similarly, the court in *Evans v. NBCUniversal Media, LLC* dismissed copyright infringement claims because the plaintiff did "not allege any specific details about the parties' works" and, instead, offered only "general, conclusory allegations" about the alleged infringement. No. 21-cv-0984, 2021 WL 4513624, at *5 (C.D. Cal. July 23, 2021). And where a plaintiff "alleges infringement of multiple distinct works, the plaintiff must specify exactly which works were infringed and *plead the elements of infringement as to each.*" *Larball Publ'g Co., Inc. v. Lipa*, No. 22 CIV 1872, 2023 WL 5050951, at *6 (S.D.N.Y. Aug. 8, 2023).

Plaintiffs have not done so here. They allege no details about any output (induced by Plaintiffs or otherwise) that allegedly infringes eleven of the fifteen asserted works. Plaintiffs address only ***four*** of their asserted works with any specificity. Am. Compl. ¶¶ 75-78. As to the remaining Eleven Works, the Amended Complaint is silent as to which Perplexity answer engine

13

output "works are [allegedly] substantially similar." *Piuggi*, 739 F. Supp. 3d at 162. That is a fatal flaw because, to assess whether works are "substantially similar," the Court must ***compare*** them—which cannot be done in the absence of allegations identifying the accused works. 4 Nimmer on Copyright § 13D.06 ("[T]he factfinder compares the two works in suit to examine their similarities—the presence of sufficient similarities between them allows the inference of factual copying, whereas the absence of sufficient similarities allows the opposite inference."); *Abdin*, 971 F.3d at 67-74 (affirming dismissal of copyright claim after detailed comparison of works to determine whether a "substantial similarity" existed); *Shull v. TBTF Prods. Inc.*, No. 18 Civ. 12400, 2019 WL 5287923, at *6-10 (S.D.N.Y. Oct. 4, 2019) (similar).

This is no niggling concern about the ***degree*** of notice (or lack thereof) provided by the Amended Complaint. Plaintiffs fail to allege, ***even in an inadequate conclusory manner***, that any Perplexity user caused Perplexity's answer engine to generate any output that infringed any of the Eleven Works. The sum total of Plaintiffs' allegations is: "Upon information and belief, there are many other[]" generations of "verbatim or near-verbatim text and identical curation of content" induced by Perplexity users. Am. Compl. ¶ 79; *compare* ¶ 79 to ¶ 52 (alleging, to support Plaintiffs' ***input*** claims in Count I, that "Perplexity included all of Plaintiffs' copyrighted content as RAG Content, *including Plaintiffs' content covered by the registrations listed above*"). In other words, Plaintiffs fail to even specify which asserted works are the subject of Count II. Without any factual allegations to support an output claim with respect to the Eleven Works, if not dismissed in its entirety for the reasons discussed in Section IV.A, Count II should be dismissed with respect to those Eleven Works. *See Stevens v. Tomlin*, No. 23-cv-5898, 2023 WL 5486247, at *2 (E.D.N.Y. Aug. 24, 2023) ("[A] plaintiff suing for copyright infringement may not rest on bare-bones allegations that infringement occurred. Rather, [he] must identify the 'specific original work

14

[that] is the subject of the claim' as well as 'by what acts' the defendant infringed the copyright.")
(citation omitted); *cf. Larball Publ'g Co.*, 2023 WL 5050951, at *7, 14 (denying motion to dismiss
where the plaintiffs "set forth facts pertaining to each work's allegedly-infringed components" and
"provide[d] side-by-side comparisons of each work's sheet music").

## V.    CONCLUSION

Perplexity respectfully requests that the Court dismiss Count II of the Amended Complaint
for failure to plead volitional conduct by Perplexity with respect to Plaintiffs' output claims. In the
alternative, Perplexity respectfully requests dismissal of Count II as to the Eleven Works for which
Plaintiffs pleaded no facts establishing any allegedly infringing output.

Dated:  March 17, 2026

Respectfully submitted,

**LATHAM & WATKINS LLP**

/s/ *Joseph R. Wetzel*

Joseph (Joe) R. Wetzel
Andrew Gass (admitted *pro hac vice*)
Brett M. Sandford (admitted *pro hac vice*)
505 Montgomery Street
Suite 2000
San Francisco, CA 94111-6538
Tel: 415.391.0600
joe.wetzel@lw.com
andrew.gass@lw.com
brett.sandford@lw.com

Sarang V. Damle
Julia R. Miller
1271 Avenue of the Americas
New York, NY 10020
Tel: 212.906.1200
sy.damle@lw.com
julia.miller@lw.com

*Attorneys for Defendant Perplexity AI, Inc.*

16

**<u>CERTIFICATION OF WORD COUNT</u>**

I certify that the foregoing memorandum of law complies with the formatting and word limit requirements set forth in Rule 7.1(c) of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York and Rule 3.C. of the Court's Individual Rules of Practice in Civil Cases because it contains 4354 words, excluding the cover page, table of contents, table of authorities, signature block, and certification of word count. This memorandum of law also complies with the applicable formatting rules regarding 12-point font and double-spaced text.

In preparing this certification, I relied on the word count of the Microsoft Word computer program used to prepare this memorandum of law.

Dated:  March 17, 2026                          */s/ Joseph Wetzel*
                                                           Joseph (Joe) R. Wetzel

17