**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ENCYCLOPÆDIA BRITANNICA, INC., and MERRIAM-WEBSTER, INC., | Case No. 1:25-cv-07546 (JLR) |
| Plaintiffs, | |
| v. | **ORAL ARGUMENT REQUESTED** |
| PERPLEXITY AI, INC., | |
| Defendant. | |

**REPLY IN SUPPORT OF DEFENDANT PERPLEXITY AI, INC.'S**
**MOTION TO DISMISS**

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ...................................................................................................1

II.    ARGUMENT........................................................................................................2

    A.    Plaintiffs Have Not Pled That Perplexity Engaged In Volitional Conduct
        That Caused The Allegedly Infringing Outputs...................................................2

        1.    *Cablevision* Forecloses Plaintiffs' Arguments For Count II...................2

        2.    Plaintiffs Did Not Allege That Perplexity Generates Infringing
            Outputs Without A Specific Request.......................................................7

    B.    Plaintiffs Fail To Plead An "Infringing Act" For 11 Of The 15 Works In
        Suit .....................................................................................................................8

III.    CONCLUSION.....................................................................................................11

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**CASES**

*Arista Records v. Usenet.com*,
633 F. Supp. 2d 124 (S.D.N.Y. 2009)........................................................................................6

*Bus. Casual Holdings, LLC v. YouTube, LLC*,
2022 WL 837596 (S.D.N.Y. Mar. 21, 2022) ............................................................................2

*Capitol Records, LLC v. ReDigi Inc.*,
934 F. Supp. 2d 640 (S.D.N.Y. 2013)........................................................................................5

*Cartoon Network LP v. CSC Holdings, Inc.*,
536 F.3d 121 (2d Cir. 2008)..........................................................................................2, 3, 4, 6

*Cole v. John Wiley & Sons, Inc.*,
2012 WL 3133520 (S.D.N.Y. Aug. 1, 2012)............................................................................9

*Elektra Ent. Grp., Inc. v. Barker*,
551 F. Supp. 2d 234 (S.D.N.Y. 2008)......................................................................................10

*EMI Christian Music Group, Inc. v. MP3tunes, LLC*,
844 F.3d 79 (2d Cir. 2016)........................................................................................................4

*Energy Intelligence Grp., Inc. v. Jefferies, LLC*,
101 F. Supp. 3d 332 (S.D.N.Y. 2015)........................................................................................9

*Fox News Network, LLC v. TVEyes, Inc.*,
883 F.3d 169 (2d Cir. 2018)...................................................................................................5, 6

*In re Warnaco Grp., Inc. Sec. Litig. (II)*,
388 F. Supp. 2d 307 (S.D.N.Y. 2005), *aff'd sub nom. Lattanzio v. Deloitte &*
*Touche LLP*, 476 F.3d 147 (2d Cir. 2007)................................................................................7

*Kadrey v. Meta Platforms, Inc.*,
2023 WL 8039640 (N.D. Cal. Nov. 20, 2023) .........................................................................3

*Larball Publ'g Co., Inc. v. Lipa*,
2023 WL 5050951 (S.D.N.Y. Aug. 8, 2023)............................................................................8

*Lefkowitz v. McGraw-Hill Glob. Educ. Holdings, LLC*,
23 F. Supp. 3d 344 (S.D.N.Y. 2014).......................................................................................10

*Marvullo v. Gruner & Jahr*,
105 F. Supp. 2d 225 (S.D.N.Y. 2000)........................................................................................9

*Perfect 10, Inc. v. Giganews, Inc.*,
   2013 WL 2109963 (C.D. Cal. Mar. 8, 2013)..........................................................................6

*Piuggi v. Good for You Prods. LLC*,
   739 F. Supp. 3d 143 (S.D.N.Y. 2024)..................................................................................8

*Psychic Readers Network, Inc. v. A&E Television Networks, LLC*,
   2025 WL 2532292 (S.D.N.Y. Sept. 3, 2025)........................................................................9

*Redcell Corp. v. A.J. Trucco, Inc.*,
   2022 WL 683007 (S.D.N.Y. Mar. 8, 2022) ..........................................................................7

*Schneider v. Pearson Educ., Inc.*,
   2013 WL 1386968 (S.D.N.Y. Apr. 5, 2013)........................................................................10

*Tremblay v. OpenAI, Inc.*,
   716 F. Supp. 3d 772 (N.D. Cal. 2024) ..................................................................................3

*VHT, Inc. v. Zillow Group, Inc*,
   918 F.3d 723 (9th Cir. 2019) ................................................................................................6

*Warren v. John Wiley & Sons, Inc.*,
   952 F. Supp. 2d 610 (S.D.N.Y. 2013)................................................................................10

## OTHER AUTHORITIES

4 Nimmer on Copyright § 13E.09 (2025).........................................................................................2

Katherine Lee et al., *Talkin' 'Bout AI Generation: Copyright and the Generative-*
   *AI Supply Chain*, 72 J. Copyright Soc'y 251 (2025)................................................................5

## I.    INTRODUCTION

The molten core of this dispute is about Perplexity's creation of backend copies (i.e., "input" copies) of freely available content on the internet to power Perplexity's answer engine, a revolutionary tool that enables users to easily and immediately obtain a wide range of factual information distilled from countless sources.  While Perplexity is confident it will prevail on the merits on a complete record, Perplexity does not seek to dismiss Plaintiffs' **inputs**-based claim (Count I) or trademark claim (Count III).  Instead, to streamline the case, Perplexity seeks to dismiss only Plaintiffs' insufficiently pled and legally deficient **outputs**-based claim (Count II) for two reasons.

*First*, under the Second Circuit's controlling decision in *Cablevision*, Perplexity does not engage in the volitional conduct required for direct infringement when providing answers to user queries via a completely automated process, at least where (as here) the queries were intentionally designed by Plaintiffs to elicit their own copyrighted content.  Plaintiffs fail to identify any volitional conduct by anyone other than themselves.  Instead, they complain that Perplexity is "shifting liability to its users" for outputs that "are verbatim or near-verbatim copies of Plaintiffs' copyrighted works."  Dkt. 46 ("Opp.") at 1.  That is a red herring.  Blame is being shifted to *Plaintiffs*, as the ones who engaged in the atypical, litigation-driven behavior to manufacture accused outputs.  Because Perplexity is not the "proximate cause" of the alleged infringement, Count II fails.

*Second*, Plaintiffs fail to allege any "infringing acts" for 11 of the 15 asserted works.  Plaintiffs do not meaningfully argue otherwise.  Instead, Plaintiffs contend they are "not required to plead *all possible* examples of Perplexity's infringing outputs."  Opp. at 16.  That misses the point.  Plaintiffs must allege *at least one* infringing output for each asserted work.  They failed to do so; therefore, Count II should be dismissed as to those 11 works (if it is not dismissed entirely).

## II.    ARGUMENT

### A.    Plaintiffs Have Not Pled That Perplexity Engaged In Volitional Conduct That Caused The Allegedly Infringing Outputs

Plaintiffs concede, as they must, that direct infringement requires volitional conduct that "causes" the copying or distribution. *Cartoon Network LP v. CSC Holdings, Inc.*, 536 F.3d 121, 131 (2d Cir. 2008) ("*Cablevision*"); *see also Bus. Casual Holdings, LLC v. YouTube, LLC*, 2022 WL 837596, at *3 (S.D.N.Y. Mar. 21, 2022) (same).[1]  Plaintiffs also concede that Perplexity's answer engine does nothing more than perform a series of automated functions in response to user requests. *See* Dkt. 45 ("Mot.") at 10 (quoting Dkt. 43 ("Am. Compl.") ¶¶ 8-9, 76).  Thus, under Second Circuit law, Perplexity does not "cause" the accused outputs.  Instead, once a user enters a search, the answer engine locates "responsive" articles to provide context to the user's request and feeds them through its RAG model to "generate[] outputs." Am. Compl. ¶¶ 9, 49.  These responses draw from a wide variety of sources. *See id.* ¶ 1.  Under Plaintiffs' highly artificial prompts specifically engineered to return infringing content, it is ***Plaintiffs***—not Perplexity—who directly cause the creation of the derivative work.  In other words, as in *Cablevision*, the Plaintiffs "pressed the button" that starts the automated process.  536 F.3d at 131.

### 1.    *Cablevision* Forecloses Plaintiffs' Arguments For Count II

Plaintiffs argue *Cablevision* is "irrelevant" because Perplexity's "intentional copying and use of Plaintiffs' copyrighted works" at the ***input*** stage furnishes the requisite volitional conduct at the ***output*** stage.  Opp. at 7-8 (citing Am. Compl.  ¶¶ 59, 66, 67-70).  But the only allegations they invoke are the same instances of supposed copying that underlie their separate ***inputs***-based

---

[1] The volitional conduct requirement supplies an "analytic framework to draw a boundary between direct liability and secondary liability." 4 Nimmer on Copyright § 13E.09 (2025).  Where a service provider lacks volitional conduct tied to the accused output, the proper framework for assessing their liability is secondary liability. *See Cablevision*, 536 F.3d at 132-33.

Section 106(1) claim, *not* their *outputs*-based Section 106(2) claim. *Compare* Am. Compl. ¶¶ 104-07 *with id.* ¶ 118. Having pleaded those claims separately, they cannot collapse them now.[2]

Plaintiffs try to avoid this problem by asserting that the "input and output ends" of Perplexity's answer engine "cannot be divorced." Opp. at 5. More specifically, Plaintiffs argue that Perplexity commits the requisite volitional conduct by "sen[ding] out crawlers" to their websites at the "input" stage, thereby "curat[ing] a hand-picked selection of infringing content for users to [query]." *Id.* at 8, 10. Plaintiffs similarly attempt to disclaim their litigation-driven prompts by arguing that they were only entered on the "foundation" of Perplexity "suppl[ying] unauthorized copies of Plaintiffs' works for users to request prior to any user having done so." *Id.* at 8. Even assuming that accurately describes the technical process underlying Perplexity's answer engine (and putting aside that this alleged conduct is squarely addressed by Count I), alleged copying at the "inputs" stage alone cannot support a separate "outputs" claim.[3]

This argument is foreclosed by *Cablevision*. There, Cablevision's "unfettered discretion in selecting the programming that it would make available for recording" was not "sufficiently proximate to the copying to displace the customer as the person who 'makes' the copies when determining liability." 536 F.3d at 132. Instead, Cablevision's control was "limited to the *channels* of programming available to a customer and not to the programs themselves" because it had "no control over what programs are made available on individual channels or when those

---

[2] Plaintiffs' claim that Perplexity's decision not to seek dismissal of Count I "favors denying" dismissal of Count II makes no sense. Opp. at 2. The mere fact that Perplexity's Rule 12 motion is targeted at one claim says nothing about the merits of that motion as to claims not addressed.

[3] Indeed, Plaintiffs in other AI litigations have tried—without success—to argue that copying at the training stage necessarily means that "every output of the [defendant's LLMs] is an infringing derivative work." *See, e.g.*, *Kadrey v. Meta Platforms, Inc.*, 2023 WL 8039640, at *1 (N.D. Cal. Nov. 20, 2023) (dismissing output claim for failure to plead substantial similarity); *Tremblay v. OpenAI, Inc.*, 716 F. Supp. 3d 772, 778 (N.D. Cal. 2024) (same). And in those cases, the Plaintiffs' "output" claims were based on a theory of *secondary* (rather than direct) infringement.

3

programs will air, if at all." *Id.*[4]  In other words, the Second Circuit focused on Cablevision's conduct *at the time the recording was made*, rather than its earlier-in-time conduct in selecting the programming it made available for recording.  536 F.3d at 132.  Thus, the question under *Cablevision* is whether Perplexity's conduct *when an output is generated* is "sufficiently proximate" to the creation of infringing works such that Perplexity, rather than the user, "makes" them.  Even accepting Plaintiffs' allegations at face value, it is not.  As alleged, Perplexity's "control" over its RAG content is confined to the source-level, not content-level; the online equivalent of *Cablevision*'s channels.  Am. Compl. ¶ 8 (Perplexity "accesses as much content as it can from Plaintiffs and other original *sources* of trusted, reliable information"), ¶ 50 (Perplexity "chooses only high-quality *sources* as RAG Content"), ¶ 64 (Perplexity's responses "are supported by citations from reputable news organizations, academic publications, and established content *sources*").  Plaintiffs never allege that Perplexity selects the individual works that support its RAG model.  Nor could they.  That is not how the product works.

Plaintiffs argue *EMI Christian Music Group, Inc. v. MP3tunes, LLC*—not *Cablevision*—controls because "[e]ven where a user specifies Britannica content as the source for a requested answer in a prompt," Perplexity's answer engine "chooses" the responsive Britannica article.  Opp. at 9-10.  But Plaintiffs ignore that, in *MP3tunes,* the music storage system's retrieval of album artwork was not performed in response to a specific user request.  Instead, it was designed to automatically retrieve the album artwork, "a copyrighted item that *a user did not request*," whenever a user uploaded a song to his or her storage "locker."  844 F.3d 79, 96 (2d Cir. 2016).  Under those distinct circumstances, it was *MP3tunes*—not the user—whose conduct was sufficiently proximate to creating the infringing copies *of the artwork*.  In contrast, Perplexity's

---

[4] All emphasis added, and internal citations and quotations omitted, unless otherwise noted.

alleged volitional conduct (*i.e.*, creating its answer engine) is ***not*** sufficiently proximate to the return of the accused outputs.  Indeed, each output on which Plaintiffs rely is the direct result of the specific, goading prompts entered by ***<u>Plaintiffs</u>***:

- <u>Paragraph 75</u>: "How does Merriam Webster define plagiarize?"
- <u>Paragraph 76</u>: "What does Britannica say about the Druids? Please limit your answer to Britannica content only" and "Please provide the exact passages from the Britannica article."
- <u>Paragraph 77</u>: "Please provide me with Britannica's article on Quantum Physics" and "Please provide the exact passages from this article."
- <u>Paragraph 78</u>: "[W]hat are the top 9 mysterious disappearances of people other than Amelia Earhart," i.e., effectively the exact title of a Britannica article ("9 Mysterious Disappearances of People Other Than Amelia Earhart").

Plaintiffs' assertion that Perplexity "chooses which Britannica article or articles are responsive" ignores that their prompts supply that exact information.  Opp. at 10.  As the academic article that Plaintiffs cite acknowledges, where "the user of the service drives the generation [of an infringing output] through their choice of prompt(s) and the service provider for the generative-AI system passively responds," the user is the direct infringer.  Katherine Lee et al., *Talkin' 'Bout AI Generation: Copyright and the Generative-AI Supply Chain*, 72 J. Copyright Soc'y 251, 353-54 (2025) (cited in Opp. at 10) (using the example of a prompt for "elsa and anna from frozen" as being user driven, unlike a prompt for "heroic princesses").

Plaintiffs' other cited cases are equally inapt.  *See* Opp. at 10-11.  The defendants in *Capitol Records, LLC v. ReDigi Inc.* and *Fox News Network, LLC v. TVEyes, Inc.* selected the specific ***content*** to power their products, which were specifically designed to facilitate infringement.  934 F. Supp. 2d 640 (S.D.N.Y. 2013); 883 F.3d 169 (2d Cir. 2018).  In *Capitol Records*, the defendants' product facilitated the unauthorized "resale" of songs as they "programmed their software to ***choose copyrighted content***" by "scan[ning] a user's computer to  build a list of eligible files that consists ***solely*** of protected music."  934 F. Supp. 2d at 657.  In *Fox News*, the defendant's product

allowed users to search for and watch ten-minute clips of television shows the *defendant* chose to record.  883 F.3d at 176, 181.  *Fox News* distinguished *Cablevision* because the defendant "decide[d] what audiovisual content to record, copie[d] that content, and retain[ed] it for thirty-two days."  *Id.* at 181.  Here, Plaintiffs concede that Perplexity does not choose the specific **content** that is included in (1) its underlying LLMs, or (2) the sources from which it creates its RAG index.  *See* Am. Compl. ¶¶ 8, 50, 64 (alleging that Perplexity has some control over sources).  Perplexity's acts to gather content from a broad array of **sources** to provide context for user inquiries is the same as Cablevision's actions, which were legally insufficient to "displace the customer as the person who 'makes' the copies."  536 F.3d at 132.

Plaintiffs also rely on *VHT, Inc. v. Zillow Group, Inc.*, which supports Perplexity.  There, the district court upheld a finding that Zillow directly infringed images that "were selected and tagged by Zillow moderators for searchable functionality" and displayed on the "Digs" platform.  918 F.3d 723, 734 (9th Cir. 2019).  While the images were originally uploaded by third parties, the non-automated decision of Zillow's human moderators was the "proximate cause" of them being searchable on "Digs."  *Id.* at 736.  There is no such human decision-making here; Plaintiffs do not allege otherwise.  That is important because "a significant difference exists between making a request to a human employee, who then volitionally operates the copying system to make the copy, and issuing a command directly to a system, which automatically obeys commands and engages in no volitional conduct."[5]  536 F.3d at 131.  Plaintiffs ignore this difference.

---

[5]  *Arista Records v. Usenet.com* is also distinguishable because the court found direct liability based on the defendants' knowledge of and contribution to their users' infringement.  633 F. Supp. 2d 124, 148-49 (S.D.N.Y. 2009).  Here, Plaintiffs do not allege that Perplexity has knowledge of any infringing outputs.  Regardless, courts have criticized *Usenet.com* as wrongly decided.  *See, e.g.*, *Perfect 10, Inc. v. Giganews, Inc.*, 2013 WL 2109963, at *9 (C.D. Cal. Mar. 8, 2013) (not following *Usenet.com* because it "focus[es] on the defendant's awareness or state of mind—rather than on *who* actually caused the infringement").

Finally, Plaintiffs seek to distinguish Perplexity's cited cases involving "automated systems" or "passive platforms" that "strictly execute users' requests" by claiming Perplexity is neither an automated system nor a passive platform. Opp. at 12. Instead, according to Plaintiffs, Perplexity "responds to user queries using a RAG process that uses the copied content in ways that exceed the user's explicit control." *Id.* But Plaintiffs' own allegations contradict this argument because, in each example output allegedly containing "full or partial verbatim reproductions of Plaintiffs' copyrighted articles" (Am. Compl. ¶ 73), Perplexity did no more than faithfully execute Plaintiffs' highly specific command (e.g., to provide "the exact passages" from "Britannica's article on Quantum Physics," *id.* ¶ 77).

### 2. Plaintiffs Did Not Allege That Perplexity Generates Infringing Outputs Without A Specific Request

Plaintiffs argue that Perplexity ignored their allegation that Perplexity's answer engine provides verbatim or near-verbatim reproductions of copyrighted content even in the absence of a specific user request. Opp. at 15. Not true. Perplexity acknowledged that Plaintiffs included a single, conclusory allegation to that effect. Mot. at 11 n.2 (citing Am. Compl. ¶ 78). But, as Perplexity explained and Plaintiffs ignored, the Court need not credit this conclusory and contradictory allegation, which includes an "example" prompt that reproduces verbatim the full title of a Britannica article. *See Redcell Corp. v. A.J. Trucco, Inc.*, 2022 WL 683007, at *8-9 (S.D.N.Y. Mar. 8, 2022); *In re Warnaco Grp., Inc. Sec. Litig. (II)*, 388 F. Supp. 2d 307, 311 (S.D.N.Y. 2005), *aff'd sub nom. Lattanzio v. Deloitte & Touche LLP*, 476 F.3d 147 (2d Cir. 2007). Other than this allegation, there are no well-pled facts to support the argument that Perplexity "makes an active, unprompted choice to copy, retrieve, and repackage Plaintiffs' content." Opp. at 16.

7

Because Plaintiffs' allegations are uniformly directed to instances where they prompted Perplexity's answer engine to provide their copyrighted content, the Court need not decide whether Perplexity would be directly liable if its answer engine reproduced copyrighted material without a specific request.   The sole, narrow question is whether Perplexity engaged in the requisite "volitional conduct" when Plaintiffs specifically requested outputs with the intent of reproducing Britannica articles or Merriam-Webster entries.   Under *Cablevision*, Perplexity did not engage in the requisite volitional conduct required for direct infringement.   Count II should be dismissed.

**B.      Plaintiffs Fail To Plead An "Infringing Act" For 11 Of The 15 Works In Suit**

Plaintiffs provide no details about any alleged *output* (induced by Plaintiffs or otherwise) that ostensibly infringes 11 of the 15 asserted works. *See* Mot. at 12-15.  Instead, Plaintiffs attempt to rewrite their Amended Complaint and mischaracterize Perplexity's motion.  Both efforts fail.

Contrary to Plaintiffs' assertion, Perplexity is not proposing "a new pleading standard" that requires alleging "every single example of every single instance of infringement."  Opp. at 16. Rather, "[w]here a plaintiff alleges infringement of multiple distinct works, the plaintiff must specify exactly which works were infringed and plead the elements of infringement as to each." *Larball Publ'g Co., Inc. v. Lipa*, 2023 WL 5050951, at *6 (S.D.N.Y. Aug. 8, 2023).  Plaintiffs chose to assert infringement of 15 works and thus must "plead the elements of infringement as to *each*." *Id.*  Plaintiffs' failure to do so is fatal to Count II for the Eleven Works.[6] *See* Mot. at 14.

The absence of specific allegations for the Eleven Works is critical because Plaintiffs must plead a "substantial[] similarity" between the asserted works and accused works "with some degree of specificity." *See* Mot. at 12-13; *Piuggi v. Good for You Prods. LLC*, 739 F. Supp. 3d 143, 162 (S.D.N.Y. 2024).  At best, Plaintiffs argue that they provided "four different instances" of alleged

---

[6] "Eleven Works" has the same meaning as in Perplexity's Motion. *See* Mot. at 12 n.3.

"unauthorized reproductions side by side," which they claim suffices to show a substantial similarity across works that span "nearly 100,000 articles" and additional "print volumes." Opp. at 16-19; *see also* Am. Compl. ¶¶ 40, 42. Plaintiffs miss the point. ***None*** of those "four different instances" involve the Eleven Works at issue. Instead, they comprise four works that Perplexity is not challenging on this basis.[7] *See* Mot. at 12 n.3.

Plaintiffs also claim these "examples" only "reflect just some of the ways that Perplexity copies, uses, and profits from Plaintiffs' works." Am. Compl. ¶ 79. But, as Plaintiffs' cases hold, "broad, sweeping allegations of infringement," such as these, do not comply with Rule 8's pleading requirements. *Energy Intelligence Grp., Inc. v. Jefferies, LLC*, 101 F. Supp. 3d 332, 340 (S.D.N.Y. 2015) (cited by Opp. at 17-18). Courts routinely dismiss similarly sweeping but nonspecific copyright claims. *See Psychic Readers Network, Inc. v. A&E Television Networks, LLC*, 2025 WL 2532292, at *3 (S.D.N.Y. Sept. 3, 2025) (dismissing claim where plaintiff did "not so much as even mention if, when, and where the three copyrighted works appear in the allegedly infringing biopic"); *Marvullo v. Gruner & Jahr*, 105 F. Supp. 2d 225, 230-31 (S.D.N.Y. 2000) (allegation that photograph was "published beyond the scope of that license" was "too broad and sweeping to satisfy Rule 8"); *Cole v. John Wiley & Sons, Inc.*, 2012 WL 3133520, at *13 (S.D.N.Y. Aug. 1, 2012) (similar).

Plaintiffs' other cited cases (Opp. at 18) involved far more detailed allegations. In *Schneider* and *Elektra*, the plaintiffs appended exhibits to their complaints that "enumerate[d]"

---

[7] Specifically, Plaintiffs cite to allegations regarding (1) the "definition of 'plagiarize,'" which are allegedly connected to Reg. No. TX0006320515; (2) "Druids," which are allegedly connected Reg. No. Txu 2-503-561; (3) "quantum physics," which are allegedly connected to Reg. No. TXu 2-503-567; and (4) "mysterious disappearances," which are allegedly connected to Reg. No. TXu 2-525-852. *Compare* Opp. at 19 *with* Am. Compl. ¶¶ 75-78. None of the foregoing identified registrations is included in the Eleven Works. *See* Mot. at 12 n.3.

9

details and "provide[d] specific information" about the infringement. *Schneider v. Pearson Educ., Inc.*, 2013 WL 1386968, at *2 (S.D.N.Y. Apr. 5, 2013); *Elektra Ent. Grp., Inc. v. Barker*, 551 F. Supp. 2d 234, 238 (S.D.N.Y. 2008). Other cases cited by Plaintiffs (Opp. at 16, 18) involved specific allegations about how various copyright licenses were exceeded. *Warren v. John Wiley & Sons, Inc.*, 952 F. Supp. 2d 610, 617-18 (S.D.N.Y. 2013) (plaintiff alleged "seventeen works were infringed upon in at least eight ways," many of which were tied to conduct exceeding specific license limitations); *Lefkowitz v. McGraw-Hill Glob. Educ. Holdings, LLC*, 23 F. Supp. 3d 344, 353 (S.D.N.Y. 2014) (plaintiff alleged defendants "exceeded the permitted uses" under "limited licenses" in specific ways and "identifie[d] a number of Defendants' publications in which the particular [images] at issue appear"). Here, Plaintiffs fail to identify any specific allegations for the Eleven Works. Nor could they—such allegations are absent from the Amended Complaint.

Plaintiffs also argue that substantial similarity is "often" a factual question "reserved until after discovery." Opp. at 19. While sometimes true, it is not so here because Plaintiffs have failed to provide ***any*** specific allegations for the Eleven Works. Plaintiffs also imply that this case differs from others with "discrete works that can be reproduced in full with the complaint," but that assertion cannot be squared with Plaintiffs' argument that, for the other four works, they "la[id] out Plaintiffs' content and Perplexity's unauthorized reproductions side by side." *Compare id.* at 20 *with id.* at 19.

Finally, Plaintiffs claim they alleged the mechanics of "how Perplexity infringed their copyrighted works," which purportedly suffices. Opp. at 16-17. But, again, Plaintiffs rely only on allegations for their separate ***inputs-based*** infringement claim. *See, e.g.*, *id.* at 17 (arguing that Perplexity "copied hundreds of thousands of Plaintiffs' copyrighted articles for its RAG database without authorization") (citing Am. Compl. ¶ 65). Even if accepted as true (it is not), that does

10

not support the claim that Perplexity's ***outputs***—i.e., the generated answers—infringe the Eleven Works.  The Amended Complaint is silent as to which works are even the subject of Count II.  At a minimum, the Court should dismiss Count II as to the Eleven Works for which Plaintiffs have failed to allege ***any*** infringing outputs.

### III.    CONCLUSION

The Court should dismiss Count II for failure to plead volitional conduct by Perplexity with respect to Plaintiffs' output claims or, alternatively, dismiss Count II as to the Eleven Works.

Dated:  March 17, 2026

Respectfully submitted,

**LATHAM & WATKINS LLP**

/s/ *Joseph R. Wetzel*

Joseph R. Wetzel
Andrew Gass (admitted *pro hac vice*)
Brett M. Sandford (admitted *pro hac vice*)
505 Montgomery Street
Suite 2000
San Francisco, CA 94111-6538
Tel: 415.391.0600
joe.wetzel@lw.com
andrew.gass@lw.com
brett.sandford@lw.com

Sarang V. Damle
Julia R. Miller
1271 Avenue of the Americas
New York, NY 10020
Tel: 212.906.1200
sy.damle@lw.com
julia.miller@lw.com

*Attorneys for Defendant Perplexity AI, Inc.*

12

## <u>CERTIFICATION OF WORD COUNT</u>

I certify that the foregoing memorandum of law complies with the formatting and word limit requirements set forth in Rule 7.1(c) of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York and Rule 3.C. of the Court's Individual Rules of Practice in Civil Cases because it contains 3,448 words, excluding the cover page, table of contents, table of authorities, signature block, and certification of word count. This memorandum of law also complies with the applicable formatting rules regarding 12-point font and double-spaced text.

In preparing this certification, I relied on the word count of the Microsoft Word computer program used to prepare this memorandum of law.

Dated:  March 17, 2026                    */s/ Joseph R. Wetzel*
                                          Joseph R. Wetzel

13