April 27, 2026

Hon. Jennifer L. Rochon
United States District Judge, Southern District of New York

Re: *Encyclopaedia Britannica, Inc. et al. v. Perplexity AI, Inc.*, No. 1:25-cv-07546-JLR (S.D.N.Y.)

Dear Judge Rochon:

I write on behalf of Plaintiffs Encyclopaedia Britannica, Inc. and Merriam-Webster, Inc. (collectively, "Britannica") to request an informal conference to compel Defendant Perplexity AI, Inc. to produce materials responsive to requests for production ("RFPs") 2–3, 17, 19–20, 22, and 24–26. These requests seek documents and source code regarding Perplexity's large-scale copying and reproduction of Britannica's copyrighted works. As alleged in Britannica's complaint, Perplexity's "answer engine" is powered by its crawling, scraping, copying, and regurgitating of high-quality, fact-checked content, including those in Britannica's copyrighted works. *See* Dkt. 43. Perplexity engages in this misconduct without authorization or compensation. *Id.*

Britannica's goal is an orderly discovery process that has each party producing the documents and other information they are obligated to produce, in time for depositions, prior to the October 16, 2026 discovery cutoff. Dkt. 39. To that end, on December 22, 2025, Britannica served comprehensive RFPs on Perplexity. In the intervening 125 days, or four months, Perplexity has produced just 100 documents, consisting of fewer than 1,000 pages. This number is particularly disappointing where, as here, Perplexity has presumably already collected, reviewed, and screened for privilege, thousands – if not tens of thousands – of documents as part of the related cases it is defending in this district including, but not limited to, against Dow Jones. Moreover, this production only came on April 17, and only after Britannica previously indicated it intended to move the Court. By contrast, Britannica has thus far produced over 90,000 documents, totaling over 240,000 pages. Notwithstanding Perplexity's failure to timely produce, Britannica is busy preparing its next production, which it intends to make promptly.

Britannica has done its level best to move things forward without burdening the Court. Specifically, Britannica has engaged in no less than five videoconference meet-and-confers with Perplexity each ranging from 1–2 hours in length.[1] It has likewise made numerous proposals to facilitate Perplexity's document production, including, for example, suggesting that Perplexity begin by simply reproducing the non-custodial documents it has already collected, reviewed, and produced in *Dow Jones & Co. v. Perplexity AI, Inc.*, No. 24-7984-KPF (S.D.N.Y.) ("*Dow Jones*"),[2] and making the obvious suggestion that any documents could be treated as Outside AEO while the parties continue to negotiate a Protective Order.[3] Unfortunately, these efforts have not proven successful, as Perplexity will not even respond to the *Dow Jones* suggestion, and all Britannica has from Perplexity is 100 documents.

---

[1] The parties met and conferred by videoconference on February 25, February 26, March 5, April 15, and April 24.
[2] *Dow Jones* is a substantially similar case in which publishers bring the same causes of action (copyright and trademark infringement) against the same defendant (Perplexity) for the same conduct (its "answer engine" that copies and uses publishers' content without authorization). Perplexity also asserts the same defense (fair use) in both cases.
[3] Examples of such proposals are shown in the parties' extensive correspondence attached as Exhibit 1. *See, e.g.*, Ex. 1 at 2–3, 14–15, 20.

Britannica thus brings this letter motion, moving to compel Perplexity to produce (1) source code for scraping and crawling web content and for the retrieval-augmented generation ("RAG") systems that copy and use Britannica's content; and (2) non-source code documents describing how Perplexity acquires and uses publishers' content. The good news is Perplexity acknowledges the relevance of these documents. Indeed, it "do[es] not dispute that certain discovery into 'the manner and process' by which Perplexity acquires content is relevant" and represented that it will produce "documents sufficient to identify the tools, technologies, and methods Perplexity uses … to obtain content…, Perplexity's policies and procedures regarding the acquisition of content…, and Perplexity's general processes for ranking, selecting, locating, and retrieving content from its RAG database for use in outputs." Ex. 1 at 7. The bad news is, notwithstanding this concession, Perplexity still has not produced these undisputedly relevant materials and also refuses to provide any concrete timeline by which it will do so. In the face of this delay, and in light of the Court's discovery schedule, Britannica requests an order compelling Perplexity to produce these materials (as laid out in Appendix 1) no later than May 15, 2026.

## I.    The Materials Are Indisputably Relevant and Proportional to the Needs of the Case.

Relevance under FRCP 26(b)(1) is an "extremely broad" standard with a "low threshold" and encompasses discovery "reasonably calculated to lead to the discovery of admissible evidence." *Delta Air Lines, Inc. v. Lightstone Grp., LLC*, 2021 WL 2117247, at *2 (S.D.N.Y. May 24, 2021). Britannica easily meets this standard.

Source Code (RFPs 25–26): Source code is the set of instructions, commands, and logic that reflects, in human-readable form, the step-by-step operations carried out by the computer when software is run. Here, Britannica seeks source code on (1) Perplexity's RAG systems that utilize content copied from Britannica and (2) Perplexity's mechanisms that crawl, scrape, index, or otherwise copy Britannica's sites. This source code is at the core of Britannica' infringement allegations. To determine whether and how Perplexity does in fact copy and use Britannica's content, *see, e.g.*, Dkt. 43 at ¶ 49, Britannica must inspect the source code underpinning those systems. Defendants in AI copyright infringement actions routinely allow inspection of the source code for the systems they use to execute the alleged infringement. *See, e.g.*, *In re OpenAI Copyright Infring. Litig.*, No. 1:25-md-3143 (S.D.N.Y.) ("*OpenAI*"), Dkt. 285, at ¶ 11 (OpenAI made available for inspection source code underlying six different large language models); *Dow Jones*, Dkts. 86, 90 (Dow Jones's and Perplexity's counsel jointly informing Judge Failla that they have resolved disputes raised in plaintiffs' motion to compel Perplexity's source code).

To the extent that Perplexity argues that its April 17 production of non-source code materials already encompasses this material, that is false. As Britannica has already explained to Perplexity in detail, *see* Ex. 2, these documents fail to explain when, where, and how Perplexity acquires, processes, and stores the content it scrapes from publishers' websites. They also lack basic detail on how Perplexity retrieves, stores, transforms, and utilizes the content it crawls in response to user queries. The production cannot substitute source code.

Technical Documents on Perplexity's Content Acquisition and Usage (RFPs 2–3, 17, 19–20, 22, 24): Both parties agree that technical documents on the manner and process by which Perplexity acquires and uses content is relevant. *See supra*; Ex. 1 at 7. Despite this agreement,

Perplexity has failed to produce the requested documents, even months into fact discovery, and refuses to provide a date by which it will do so.

## II.    The Discovery Sought Is Not Overbroad.

Although Perplexity's objections are amorphous, one objection Perplexity has made to hold up production is that discovery in this case should be restricted to its practices with respect to scraping and utilizing Britannica's Asserted Works specifically. That is an unduly narrow reading of Perplexity's discovery obligations. As Britannica has repeatedly explained: "There is no rule that entitles the defendant to cherry-pick materials once it is satisfied that those materials sufficiently relate—in the defendant's own discretion—to the works-in-suit." Ex. 1 at 10. Britannica has also asked Perplexity to confirm whether "it maintains a separate system, manner, and/or process for obtaining, copying, and regurgitating specifically plaintiffs' content, separate from other content." *Id.* Unsurprisingly, Perplexity has never so confirmed.

Courts have routinely granted copyright plaintiffs discovery into AI systems without limiting the discovery to strictly plaintiffs' copyrighted content. *See, e.g.*, *OpenAI*, at Dkt. 910 (granting class plaintiffs' motion to compel production of base versions of the GPT-3.5 and GPT-4 models, without any limitation to only portions of the models that use their content). Perplexity's practice of copying content more broadly is also relevant for its own fair use defense, as well as issues of willfulness and volitional conduct (an issue that Perplexity itself has made relevant by partially moving to dismiss on this ground).

- <u>Fair Use</u>: *See, e.g.*, *OpenAI*, at Dkt. 896 (denying OpenAI's motion for reconsideration, renewing order to produce 20 million ChatGPT output logs, and observing: "the relevance of the 20 Million ChatGPT Logs *is not limited to instances where News Plaintiffs' copyrighted works may be reproduced in whole or in part*. Indeed, output logs that do not contain reproductions of News Plaintiffs' works may still be relevant to OpenAI's fair use defense" (emphasis added)); *id.* at Dkt. 1021 (affirming magistrate judge's production order);
- <u>Willfulness</u>: *See, e.g.*, *Otto v. Hearst Communications, Inc.*, 345 F. Supp. 3d 412, 437 (S.D.N.Y. 2018) (noting that a reasonable jury could find that an "allegedly recurring pattern of infringement" in other situations can indicate "willful blindness for acting in accordance with the copyright holder's rights");
- <u>Volitional Conduct</u>: *See, e.g.*, *Arista Records LLC v. Usenet.com, Inc.*, 633 F. Supp. 2d 124, 148 (S.D.N.Y. 2009) (considering defendants' broader conduct beyond the use of plaintiff's content specifically, including defendants' "active measures to create servers dedicated to mp3 files and to increase the retention times of newsgroups containing digital music files").

## III.    Perplexity Cannot Show Undue Burden.

In light of Perplexity's refusal to consider Britannica's *Dow Jones* compromise proposal, any burden objections ring hollow. It cannot simultaneously refuse to produce documents based on burden and ignore proposals specifically made to mitigate purported burden.

Britannica respectfully ask the Court to set a conference to consider its motion, so that the parties can obtain clarity on the scope of discovery at this early stage and reduce the need for multiple disputes or requests to extend the schedule.

Respectfully,

*/s/ Davida Brook*
Davida Brook
Susman Godfrey L.L.P.
*Counsel for Plaintiffs Encyclopaedia*
*Britannica, Inc. and Merriam-Webster, Inc.*

cc:    All Counsel of Record (via ECF)