UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ENCYCLOPAEDIA BRITANNICA, INC., et al.,<br><br>Plaintiffs,<br><br>-v-<br><br>PERPLEXITY AI, INC.,<br><br>Defendant. | CIVIL ACTION NO. 25 Civ. 7546 (JLR) (SLC)<br><br>**ORDER** |

**SARAH L. CAVE,** United States Magistrate Judge.

## I. INTRODUCTION

Plaintiffs Encyclopaedia Britannica, Inc. ("Britannica") and Merriam-Webster, Inc. ("MW," together, "Plaintiffs"), bring this action for copyright infringement against Defendant Perplexity AI, Inc. ("Perplexity"). (Dkt. No. 43 (the "Amended Complaint")). Before the Court is Plaintiffs' demand that Perplexity produce, at its expense, additional data from its retrieval augmented generation ("RAG") model and user activity log ("UAL"). (Dkt. Nos. 92 (the "Request"); 92-1; 96; 96-1; 96-2; 96-3; 101-1; 101-2). For the reasons set forth below, the Request is **GRANTED IN PART** and **DENIED IN PART**.

## II. BACKGROUND

### A. Factual Background

#### 1. The Parties

##### a. Plaintiffs

For more than 100 years, Plaintiffs have published "the world's leading English-language encyclopedia and dictionary[,]" and in recent years, in digital format. (Dkt. No. 46 at 8; see Dkt.

No. 43 ¶¶ 2–5, 34–38). Plaintiffs generate this content, for which they have registered multiple copyrights and trademarks, through the work of "human employees, including writers, editors, researchers, and other content creators[.]" (Dkt. No. 46 at 8–9; see Dkt. Nos. 43 ¶¶ 39–43; 43-1–43-15). Thirteen of Plaintiffs' copyright registrations became effective between April and December 2025. (Dkt. Nos. 92 at 2; 101-1 at 1).

**b. Perplexity**

"Perplexity is a generative [artificial intelligence ("AI")] company[,]" meaning that it uses a large language model ("LLM") to generate content "such as text, images, audio, or other data, rather than simply analyzing existing data." (Dkt. No. 43 ¶¶ 1, 45–46). Perplexity uses the RAG method to connect its LLMs "to external sources of information, such as live search results, to improve the quality of its outputs." (Id. ¶ 49). Perplexity's AI products use the RAG method in the following sequence: (1) a user inputs a prompt, e.g., a question; (2) Perplexity obtains and copies content from its search index relating to the prompt; (3) Perplexity combines the original prompt with the retrieved content to provide additional context; and (4) Perplexity provides the combined data to an LLM, which generates and delivers to the user a natural-language response. (Id. ¶ 49). The content in the RAG method ("RAG Content") is the source material from which Perplexity generates the answers to users' prompts and questions. (Id. ¶ 50).

The RAG method on its own may have been all well and good, but Plaintiffs allege that Perplexity started "cannibalizing traffic to Plaintiffs' websites with AI-generated summaries of Plaintiffs' own content." (Dkt. No. 43 ¶ 6). Plaintiffs allege that Perplexity violates their "exclusive rights under the Copyright Act [17 U.S.C. § 101 et seq.] in at least three ways[.]" (Id. ¶ 9). First, "Perplexity infringes Plaintiffs' copyrights at the curation stage when it uses a

software program called 'PerplexityBot' to crawl and scrape Plaintiffs' websites for Perplexity's 'answer engine.'" (Id.; see id. ¶¶ 59, 65, 69). Second, "Perplexity infringes Plaintiffs' copyrights at the input stage when it copies Plaintiffs' copyrighted articles that are responsive to user searches to prompt responses from its RAG model." (Id. ¶ 9). Third, "Perplexity infringes Plaintiffs' copyrights at the output stage when its RAG model generates outputs that are substantially similar to those inputs[,]" containing either "full or partial verbatim reproductions of Plaintiffs' copyrighted articles[,]" "paraphras[ing] or summariz[ing] Plaintiffs' copyrighted works," or "cop[ying] the selection and curation of content and lists in Britannica's copyrighted articles." (Id.)

Plaintiffs also allege that Perplexity dilutes their trademarks in violation of the Lanham Act, 15 U.S.C. § 1051 et seq., in three ways. (Dkt. No. 43 ¶ 10). First, Perplexity's "AI products generate made-up content or 'hallucinations' and falsely attribute them to Plaintiffs by displaying them alongside Plaintiffs' famous trademarks[.]" (Id.) Second, Perplexity's AI products "misleadingly omit portions of Plaintiffs' content without disclosing those omissions and display the incomplete and inaccurate reproductions alongside Plaintiffs' famous trademarks." (Id.) Third, Perplexity uses Plaintiffs' trademarks in a manner that "constitutes false designations of origin and confuses and deceives Perplexity users into believing that the hallucinations and/or undisclosed omissions are associated with, sponsored by, or approved by Plaintiffs." (Id.)

**2. The Data**

Perplexity's answer engine requires two databases for operation. First, the "RAG Database" stores the "indexed web content that Perplexity's answer engine uses to source and verify its responses to user queries." (Dkt. No. 96-1 ¶ 5). Creating a RAG Database snapshot

involves a multi-step, multi-day, multi-thousand-dollar undertaking by Perplexity's engineers. (Id. ¶¶ 11–12).[1]

Second, the "UAL Database" records information at four stages: (1) the user's query, prior conversation history, and session-level metadata; (2) how Perplexity's answer engine processed the query, including the retrieval calls it made to pull in, rank, and synthesize external content; (3) the instructions to Perplexity's LLMs; and (4) the final output (or response) to the user. (Dkt. No. 96-1 ¶ 7). Perplexity maintains its UAL Database in "deep storage[,]" from which its engineers extract, process, and transfer UAL data for external use. (Id. ¶¶ 13, 16–18).

The RAG and UAL databases, which Perplexity has continued to preserve (Dkt. No. 96-1 ¶ 10), "are the most commercially sensitive and voluminous data assets in Perplexity's possession." (Dow Jones Action [defined below], Dkt. No. 113 at 1). Perplexity has engaged FTI Consulting, Inc. ("FTI") to host and make available for inspection in a secure environment UAL data and produce RAG snapshots. (Dkt. No. 96-2 ¶ 3).

### 3. The Dow Jones Action

In 2024, the wave of litigation against Perplexity began when Dow Jones & Co., Inc. and NYP Holdings, Inc. (together, "Dow Jones"), filed a complaint in this District. See Dow Jones & Co., Inc. v. Perplexity AI, Inc., No. 24 Civ. 7984 (KPF) (S.D.N.Y.) (the "Dow Jones Action"). Dow Jones similarly alleged that Perplexity committed copyright infringement by copying and inputting Dow Jones' copyrighted works — which Dow Jones published and registered before September 30, 2024 — into Perplexity's RAG database, providing consumers with outputs that

[1] Portions of Perplexity's declarations are under seal (see Dkt. No. 97), so we reference them only at a high level to respect Perplexity's confidentiality concerns.

contained Dow Jones' copyrighted works, and generating and attributing to Dow Jones hallucinations in Perplexity's outputs to consumers. See Dow Jones & Co., Inc. v. Perplexity AI, Inc., 797 F. Supp. 3d 305, 316 (S.D.N.Y. 2025) ("Dow Jones"). (See also Dow Jones Action, Dkt. No. 112 at 2–3). Dow Jones asserted against Perplexity two claims for copyright infringement and one for false designation of origin and trade dilution under the Lanham Act. Dow Jones, 797 F. Supp. 3d at 318–19.

After the Honorable Katherine Polk Failla denied Perplexity's motion to dismiss or transfer venue in the Dow Jones Action, Dow Jones and Perplexity proceeded to discovery. Dow Jones, 797 F. Supp. 3d at 343. Perplexity initially produced to Dow Jones two snapshots of RAG data, totaling over 300 terabytes (the "Dow Jones RAG Snapshots"), and over 100 terabytes of UAL data, for the period from September 2024 through November 11, 2024, and from March through May 2025. (Dkt. No. 96-1 ¶¶ 6, 8; Dow Jones Action, Dkt. No. 112). This did not cover the entire timeframe when Dow Jones registered its works and the months just before and after, however, so Dow Jones sought to compel Perplexity to produce an additional seven months of UAL data. (Dow Jones Action, Dkt. No. 112). Perplexity objected, asserting that the "extraordinary burden" was "not proportional to the needs of the case." (Dow Jones Action, Dkt. No. 113 at 1–2). Perplexity noted that transferring one day's worth of UAL data — approximately 20 terabytes — took about seven hours, so transferring more than seven additional months of UAL data would involve two months of manual work by its engineers, whose attention would be diverted from other ongoing business operations. (Dow Jones Action, Dkt. No. 113 at 2). Judge Failla, while recognizing the burden on Perplexity of producing seven additional months of UAL data, nevertheless deemed that burden "proportional to the needs of [the] case" and granted

Dow Jones' motion to compel. (Dow Jones Action, Dkt. No. 115 at 4). Accordingly, in the Dow Jones Action, Perplexity has produced UAL data for the period May 2024 through May 2025 (the "Dow Jones UAL Data"). (Dkt. No. 92 at 1–2).

**B. <u>Procedural Background</u>**

On September 10, 2025, Plaintiffs filed the original complaint. (Dkt. No. 1). After Perplexity moved to dismiss, the parties stipulated to Plaintiffs' filing the Amended Complaint (Dkt. Nos. 29; 48), which Plaintiffs filed on March 16, 2026. (Dkt. No. 43). In the Amended Complaint, Plaintiffs assert three claims: (1) copyright infringement based on Perplexity's copying of Plaintiffs' copyrighted works as input for RAG content (the "Input Claim"); (2) copyright infringement based on Perplexity's copying of Plaintiff's copyrighted works to create outputs for user queries (the "Output Claim"); and (3) false designation of origin and dilution of Plaintiffs' trademarks (the "Trademark Claim")). (Dkt. No. 43 ¶¶ 101–34). Perplexity's motion to dismiss the Output Claim is currently pending before the Honorable Jennifer L. Rochon. (Dkt. No. 44).

In the meantime, the parties have proceeded to fact discovery, the current deadline for which is October 16, 2026. (Dkt. No. 39 at 2 (the "CMP")). The parties have agreed to, and Judge Rochon has entered, a confidentiality agreement and protective order (Dkt. No. 55 (the "PO")), an ESI protocol (Dkt. No. 61 (the "ESI Protocol")), a source code protocol (Dkt. No. 63 (the "SCP")), and a stipulated data inspection protocol (Dkt. No. 76 (the "SDIP")). The SCP covers the parties' disclosure of "Source Code Material[,]" whereas the SDIP specifically covers Perplexity's RAG and UAL Databases. (Dkt. Nos. 63 ¶ 4; 76 ¶ 6).

During fact discovery, Perplexity produced to Plaintiffs the Dow Jones RAG Snapshots and made the Dow Jones UAL Data available for Plaintiffs' inspection. (Dkt. Nos. 92 at 1; 96-1 ¶¶ 6,

8; 112 at 61:21–23). On May 8, 2026, Plaintiffs asked Perplexity to produce additional RAG and UAL data for August 2025 through May 2026, an additional ten months. (Dkt. No. 77 at 1 (the "Additional Data")). In response, Perplexity proposed a cost-sharing arrangement, absent which it claimed that production of the Additional Data would be "unduly burdensome and not proportional." (Id. at 2).

Following a conference with the parties on July 24, 2026 (the "July 24 Conference"), the Court entered a schedule for the parties to submit letters regarding the relevance of the Additional Data. (Dkt. No. 88 ¶ 2). On July 29, 2026, Plaintiffs submitted their letter, on August 3, 2026, Perplexity submitted its letter and supporting declarations, and on August 7, 2026, Plaintiffs submitted a reply letter and supporting declaration. (Dkt. Nos. 92; 96; 96-1; 96-2; 101-1; 101-2). At a conference on August 26, 2026, the Court heard additional arguments from the parties regarding the Additional Data and indicated that this decision would follow. (Dkt. Nos. 111 ¶ 11; 112 at 55–65).

## III. DISCUSSION

### A. Legal Standard

Federal Rule of Civil Procedure 26(b)(1) governs the scope of discovery and permits a party to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. . . ." Fed. R. Civ. P. 26(b)(1). Courts construe relevance "broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on any party's claim or defense." Doe v. Sarah Lawrence Coll., No. 19 Civ. 10028 (PMH) (JCM), 2021 WL 197132, at *3 (S.D.N.Y. Jan. 20, 2021).[2]

[2] Internal citations and quotation marks are omitted from case citations unless otherwise indicated.

In deciding whether discovery is proportional to the needs of the case, courts consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Doe, 2021 WL 197132, at *2. "[T]he court must limit the frequency or extent of discovery otherwise allowed . . . if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative . . .; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C).

Of course, "[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). "A district court has broad discretion to determine the scope of discovery." Roman Cath. Diocese of Rockville Ctr., N.Y. v. Arrowood Indem. Co., No. 20 Civ. 11011 (JLR), 2022 WL 17593312, at *4 (S.D.N.Y. Dec. 13, 2022) (citing Crawford-El v. Britton, 523 U.S. 574, 598 (1998)).

**B. Application**

Plaintiffs' Request for the Additional Data raises three questions: (1) whether the Additional Data is relevant; (2) whether requiring Perplexity to produce the Additional Data is proportional to the needs of this action; and (3) who should bear the cost of hosting the Additional Data. (See Dkt. Nos. 92; 96; 101-1). We conclude that, while the Additional Data is relevant, requiring Perplexity to produce all of the Additional Data is not proportional to the needs of the case, and that Perplexity shall produce and bear the costs of (a) producing one

additional RAG snapshot and (b) hosting six months of additional UAL data for Plaintiffs' inspection.

### 1. Relevance

Plaintiffs principally argue that the Additional Data is relevant because it corresponds to the period "when [Plaintiffs] registered most of [their] works and the months just surrounding it." (Dkt. No. 92 at 2; see Dkt. No. 101-1 at 1). Just as the Dow Jones RAG Snapshot and Dow Jones UAL Data "correspond[] to the timeframe when Dow Jones registered its works and the months just surrounding it[,]" so too, Plaintiffs argue, Perplexity should produce in this action the RAG and UAL data that correspond to the period when Plaintiffs registered the works that Perplexity has infringed. (Dkt. Nos. 92 at 2; 101-1 at 1). In addition, Plaintiffs argue that the Additional Data is relevant to merits issues, including statutory damages, fair use, and willfulness. (Dkt. Nos. 92 at 3–4; 101-1 at 1–2).[3]

Perplexity's arguments in opposition principally go to the merits of Plaintiffs' claims: it disputes the truth of Plaintiffs' assertion that "'each RAG retrieval is a new and independent act of infringement'" and reasserts its arguments in support of dismissal of the Output Claim. (Dkt. No. 96 at 2). Similarly, Perplexity asserts that Plaintiffs have waived their arguments concerning willfulness and fair use, and in any event, disputes them on the merits. (Dkt. No. 96 at 2). Perplexity does not dispute, however, that the relevant time frame for its RAG and UAL data corresponds to the period of a plaintiff's registration of its copyrighted works, in this action or in the Dow Jones Action. (See Dkt. No. 101-1).

[3] Plaintiffs' contention that "Perplexity has twice agreed to produce [the Additional Data]" is not exactly accurate, as on both occasions, Perplexity made the Additional Data contingent on Plaintiffs' agreement to share the costs, which they did not do. (Dkt. Nos. 92 at 2–3; 96 at 1).

We agree with Plaintiffs — and with Judge Failla in the Dow Jones Action (Dow Jones Action, Dkt. No. 115) — that, for purposes of determining the relevant time frame for Perplexity's production of RAG and UAL data, we must look to the period of Plaintiffs' copyright registrations. See Psihoyos v. John Wiley & Sons, Inc., No. 11 Civ. 1416 (JSR), 2011 WL 4916299, at *4 (S.D.N.Y. Oct. 14, 2011) (explaining that a copyright "plaintiff must show that his registration of each [work] that he claims was infringed predates defendant's first infringing use."). Here, most of Plaintiffs' copyright registrations became effective between April and December 2025. (Dkt. Nos. 92 at 1–2; 101-1 at 1). The beginning of this period overlaps with only one of the Dow Jones RAG Snapshots (May 2025), and only some of the Dow Jones UAL Data, which goes through May 2025. (Compare Dkt. Nos. 43-1–43-15, with 96-1 ¶¶ 6, 8). Plaintiffs propose that the Additional Data begin in August 2025 (Dkt No. 92 at 1), and Perplexity acknowledges that the period of "post-registration infringement" is what would be relevant. (Dkt. No. 112 at 61:2–6). Accordingly, Perplexity shall be required to produce an additional RAG snapshot dated after August 2025 and additional UAL data beginning in August 2025; the end date for the UAL data we determine in the next section.[4]

**2. Proportionality**

Perplexity, supported by declarations from its Deputy Chief Technology Officer and from FTI, argues that production of the Additional Data would require hundreds of hours of work by its engineers and come at an additional incremental cost of hundreds of thousands of dollars per

[4] Having found the relevance of the Additional Data corresponding to Plaintiffs' copyright registrations, we do not need to reach Plaintiffs' additional relevance arguments based on statutory damages, fair use, and willfulness. (Dkt. Nos. 92 at 2–3; 101-1 at 2).

month. (Dkt. No. 96 at 2; see Dkt. Nos. 96-1; 96-2).[5] Plaintiffs dispute Perplexity's hyperbolic assertions of burden, noting that Perplexity recently stated that hosting costs approximated $12,000 to $14,000 per month and offering hosting cost estimates in the tens, rather than the hundreds, of thousands of dollars per month. (Dkt. Nos. 101-1 at 2–3; 101-2).[6]

We find it unnecessary to don green eyeshades to decipher which party has the more accurate calculation of cost and burden. Suffice it to say, requiring Perplexity to produce any of the Additional Data, let alone ten months' worth, is not a small undertaking. (See Dkt. No. 96-1 ¶¶ 10–19). Exercising our "broad discretion in resolving discovery disputes and in fashioning limitations designed to balance the need for disclosure against competing concerns of burden, proportionality, and confidentiality[,]" Hink v. Duffy, No. 24 Civ. 279 (BKS) (PJE), 2026 WL 2110784, at *3 (N.D.N.Y. July 22, 2026), we find that requiring Perplexity to produce one additional RAG snapshot and six months of UAL data, from August 2025 — Plaintiffs' proposed beginning date — through January 2026 — a little over a month after Plaintiffs' latest registration — appropriately balances Plaintiffs' need for information to determine whether and to what extent Perplexity has infringed their copyrights and trademarks against the expense and burden on Perplexity of assembling the data for production (in the case of the RAG snapshot) and inspection (in the case of the UAL data). See, e.g., Buhrman v. Univ. of Rochester, No. 24 Civ. 6029 (FPG) (CDH), 2026 WL 2267361, at *8–9 (W.D.N.Y. Aug. 6, 2026) (compelling production of "narrower subset" of information than plaintiff requested to reduce burden on defendant).

[5] (See n.1, supra).

[6] The declaration from Plaintiffs' vendor, Avia Global Consulting Corporation, is also partially sealed (see Dkt. No. 103), so we are similarly cautious in referring to its contents.

Accordingly, Perplexity shall produce one additional RAG snapshot — for a date or period about which the parties shall meet and confer (the "New RAG Snapshot") — and six months of UAL data for the period from August 2025 through January 2026 (the "New UAL Data").

**3. Costs**

Citing Federal Rule of Civil Procedure 26(c)(1)(B), Perplexity asks the Court to shift to Plaintiffs the cost of producing an additional RAG snapshot and hosting additional UAL data, both of which it contends are "at best tangentially relevant and unduly burdensome." (Dkt. No. 96 at 2–3). Plaintiffs respond that, while they will pay the cost of hosting additional RAG data Perplexity produces, Perplexity points to no similar AI litigation in which a court has shifted to a requesting party the costs of hosting inspection-only data. (Dkt. Nos. 101-1 at 3; 112 at 55–56). Plaintiffs add that they previously offered to pay half of the hosting costs — $6,000 per month — but Perplexity rejected that offer. (Dkt. Nos. 90 at 8; 92 at 4).

Federal courts operate on the presumption that "the responding party must bear the expense of complying with discovery requests[.]" Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 358 (1978). Under Rule 26(c)(1)(B), a court "may, for good cause," allocate discovery costs between the parties. Fed. R. Civ. P. 26(c)(1)(B); see Zubulake v. UBS Warburg LLC, 216 F.R.D. 280, 283 (S.D.N.Y. 2003). The responding party seeking to shift costs bears the burden of proof. Id.

Here, we find that Perplexity has met its burden of showing that good cause exists to shift to Plaintiffs some of the costs of hosting the New UAL Data. We note the orders-of-magnitude difference between the $12,000 to $14,000 per month Perplexity previously quoted to Plaintiffs for UAL hosting costs and the hundreds of thousands of dollars Perplexity now calculates, and thus view the latter with considerable skepticism. (Compare Dkt. No. 101-1 at 2–3, with

Dkt. No. 96-2 ¶¶ 3, 9–10). While this is not a case where Perplexity intentionally converted data into an inaccessible format, see, e.g., Quinby v. WestLB AG, 245 F.R.D. 94, 103 (S.D.N.Y. 2006), we again recognize that hosting the New UAL Data imposes a significant additional burden and expense on Perplexity at a relatively late stage of document discovery, thus providing good cause to require Plaintiffs to shoulder some of that burden. See PNC Bank, Nat'l Ass'n v. Wolters Kluwer Fin. Servs., Inc., 73 F. Supp. 3d 358, 377 (S.D.N.Y. 2014) (shifting to plaintiff 50% of defendant's costs of additional discovery that plaintiff requested). We therefore require Plaintiffs to share the costs of hosting the New UAL Data up to the amount of $6,000 per month.

## IV. CONCLUSION

For the reasons set forth above, Plaintiffs' Request at Dkt. No. 92 is **GRANTED IN PART** and **DENIED IN PART**. Perplexity shall (1) produce to Plaintiffs the New RAG Snapshot, i.e., one additional RAG snapshot, for a date or period as to which the parties shall meet and confer; and (2) host for inspection the New UAL Data, i.e., six months of UAL data from August 2025 through January 2026, to the hosting costs of which Plaintiffs shall contribute $6,000 per month. The parties shall be prepared to discuss the status of the production of the New RAG Snapshot and the hosting of the New UAL Data at the telephone conference scheduled for **September 8, 2026 at 4:30 p.m. ET**. (Dkt. No. 111 at 4).

Dated: New York, New York
September 2, 2026

SO ORDERED.

**SARAH L. CAVE**
**United States Magistrate Judge**